SHELBURNE FALLS NATIONAL BANK *vs.* WILLIAM P. TOWNSLEY.

Notice of the dishonor of a promissory note, from the holder to an indorser, by a drop-letter deposited in the post-office of the town where the holder resides, addressed to the indorser as if he also resided there, is insufficient without proof that it actually and seasonably reached him, if he resides in another post town, although he is in the habit of resorting to both post-offices.

If the holder of a dishonored promissory note, under cover to whom a notice to an indorser of its protest is seasonably sent by mail by the notary, from another post town where the note was payable, replaces it in the post-office without unreasonable delay, properly addressed to the indorser, it is immaterial to the sufficiency of the notice to bind the indorser, that in the ordinary course of the mails he might have received it sooner if it had been mailed to him directly by the notary.

CONTRACT on two promissory notes signed by Charles W. Stockbridge, payable to the order of Franklin Ballard, indorsed by Ballard and the defendant, and discounted by the plaintiffs.

At the new trial in the superior court, before *Brigham*, C. J., after the decision reported 102 Mass. 177, the defendant relied upon want of seasonable notice of the presentment and dishonor of both notes. It appeared that they were payable in New York City, one on Thursday, July 5, 1866, and the other on Saturday, July 7, 1866, and demand and protest for nonpayment was seasonably made on each. The defendant admitted that he received through the post-office at Shelburne Falls, in this state, notices of their dishonor, sufficient in form, dated at New York City on the day of maturity of each note respectively, and signed by Myron Winslow, a notary public at that city; but testified that he could not tell when he received them, and thought that he received both at the same time; and produced them, and with them two envelopes addressed to him at Shelburne Falls, one of which bore

a postmark of July 12, and that corner of the other on which postmarks are usually stamped was torn off.

To prove due notice to the defendant, the plaintiffs, among other evidence, introduced (as at the former trial) the deposition of George W. Warren, who was their cashier at the time of the dishonor of the notes, and who testified that in due course of mail, after the maturity of each note, he received from the notary Winslow on different dates notices of their nonpayment; that there were three notices relating to each note, which were addressed respectively to himself as the plaintiffs' cashier, to Ballard, and to the defendant; that he could not give the precise dates when he sent these notices respectively to the defendant, but that he did so immediately upon receiving them from the notary ; that he put each of them into the post-office at Shelburne Falls, addressed to the defendant at that place.

It appeared that Shelburne Falls was a village in the town of Shelburne ; that the plaintiffs' bank was in Shelburne ; that the defendant lived in the town of Buckland, about midway between Shelburne Falls and the village of Buckland Centre ; that there was a post-office at Buckland Centre ; and that the defendant was in the habit of receiving letters at both places.

" There was also evidence tending to prove (although the fact was disputed) that ordinarily the defendant was at the village of Shelburne Falls daily, and much more frequently than at Buckland Centre ; and that much the larger part of his mail matter came in and went out from the Shelburne Falls post-office, although it was claimed by the defendant that Buckland was his true post-office address.

" The plaintiffs also introduced the testimony of the postmaster at Shelburne Falls, showing that usually letters put into the post-office in New York City during the business hours of any day reached Shelburne Falls during the evening of the following day, from seven to eight o'clock; but that letters mailed in the morning in New York occasionally arrived in Shelburne Falls in the afternoon of the following day. But there was no evidence to show whether the evening mails at Shelburne Falls were distributed on that or the following day    There was also testimony of

the postmaster, that the outgoing mails at Shelburne Falls were closed at about noon of each day, in 1866 ; and that at that hour his postmark was changed, so that all letters which were dropped into the office after noon of any day would bear the postmark of the date of the next day ; but that he could not say that the envelope produced by the defendant and bearing the postmark of the 12th of July was not put into the office as early as the morning of the 11th. It was testified to by the plaintiffs' witnesses, and not denied by the defendant, that the mail from New York City to Buckland passed through the Shelburne Falls post-office ; and that letters from New York to Buckland, reaching Shelburne Falls on Saturday, would not arrive in the Buckland post-office till the afternoon of the following Tuesday, and also those arriving at Shelburne Falls on Tuesday would not reach Buckland until the afternoon of the following Saturday, the mails from Shelburne Falls to Buckland leaving Shelburne Falls twice a week, on Tuesdays and Saturdays, at noon."

Upon the foregoing testimony, the judge, against the objection of the plaintiffs, instructed the jury, among other things, as follows : " If in fact the notices thus sent by the plaintiffs were within twenty-four hours after receipt by the bank received by the defendant, he may be charged as indorser. If the notes declared on were protested for nonpayment in New York City on certain days, and if notifications addressed to the defendant were inclosed in an envelope addressed to the plaintiffs at Shelburne Falls, which, if duly mailed there (at New York City) on the next day would in due course of mail arrive at Shelburne Falls on the evening after the second day after such protest (excepting when Sunday intervened between the day of protest and day of mailing) a mailing of such notices, addressed to the defendant at Shelburne Falls, (his residence being in Buckland,) on the next day, would not be seasonable for the purpose of notifying the defendant of such protest and charging him as indorser of said notes as it is necessary that the notices thus remailed and addressed by the plaintiffs should reach the post-office in Shelburne as early substantially as they would have arrived there if mailed and addressed to him at the Shelburne Falls post-office by said notary in New York."

Under these instructions, the jury returned a verdict for the defendant, and also answered the following questions in the negative: 1. "Did the defendant receive seasonable notice of the protest of the notes in suit, or of the protest of either of them?" 2. "Did the plaintiffs mail the notices at the Shelburne Falls post-office substantially as soon as they arrived there, so that they were in the post-office, addressed to the defendant, substantially as soon as if they had been mailed and directed to him at Shelburne Falls by the notary in New York?" The plaintiffs alleged exceptions.

*S. T. Field*, for the plaintiffs, cited *Seneca County Bank* v. *Neass*, 5 Denio, 329 ; *Morris* v. *Husson*, 4 Sandf. 93 ; *Bradley* v. *Davis*, 26 Maine, 45 ; *Manchester Bank* v. *Fellows*, 8 Foster, 302 ; *Jones* v. *Lewis*, 8 W. & S. 14 ; *Timms* v. *Delisle*, 5 Blackf. 447 ; *Bell* v. *State Bank*, 7 Blackf. 456 ; *Fisher* v. *State Bank*, Ib. 610 ; *Foster* v. *Sineath*, 2 Rich. 338 ; *Carson* v. *State Bank*, 4 Alab. 148 ; *Walker* v. *Bank of Augusta*, 3 Georgia, 486 ; *Barret* v. *Evans*, 28 Missouri, 331 ; *Linn* v. *Horton*, 17 Wisc. 151 ; *Eagle Bank* v. *Hathaway*, 5 Met. 212 ; *Fitchburg Bank* v. *Perley*, 2 Allen, 433 ; *True* v. *Collins*, 3 Allen, 438 ; *Cabot Bank* v. *Warren*, 10 Allen, 522 ; *Bank of Columbia* v. *Lawrence*, 1 Pet. 578 ; *United States Bank* v. *Carneal*, 2 Pet. 543, 549.

*W. S. B. Hopkins*, (*D. Aiken* with him,) for the defendant.

AMES, J.   When this case was before the court on a former occasion it was decided that, under the circumstances, the plaintiffs could not charge the defendant as an indorser, by proof that a notice from themselves had been deposited in the post-office at Shelburne Falls, directed to him as of that place.   There was a post-office at the defendant's place of residence, and a letter transmitted by mail would have reached him there.   If the plaintiffs saw fit to consider him as residing at Buckland, they could have notified him by mail.   If they chose, for the purposes of notice, to treat him as a resident of Shelburne Falls, the drop-letter was not a sufficient notice, without proof that it actually and seasonably reached him.   Upon an examination of all the authorities now cited by the plaintiffs, we find no case in which it is held that an indorser, living in a post town, is properly notified by a

drop-letter, left for him in the post-office in another town, where the holder resides, and addressed to the indorser as if he also re sided there, even though it should appear that the indorser is in the habit of resorting to the post-office in each of the two places.

It was also decided at the former hearing, that the defendant might be charged as indorser as upon a notice directly from the notary in New York, if the notice for him was returned to the post-office seasonably, in accordance with the decision in *Eagle Bank* v. *Hathaway*, 5 Met. 212. This left no question to be tried, except the single and simple one of the truth of the testimony of the cashier, that he addressed and returned the notice to the post-office immediately upon its receipt. If he did so, the plaintiffs were entitled to recover. The case of *Eagle Bank* v. *Hathaway* assumes that if so redeposited on the same day as received the notice would reach the indorser substantially as soon as if origi-nally directed to him, and holds such notice to be sufficient. If received at night, or after business hours, and redeposited the next day, there might be some question of fact whether the delay over night made any difference. But no such question appears to be raised here.

The answer of the jury to the second inquiry put to them ap-pears to cover the question thus presented. But from the instruc-tions given we are led to apprehend that it was unnecessarily and improperly involved with another question, as to the probability of its earlier receipt, if otherwise directed from New York, de-pending upon the ordinary course of the mails between these two places. The jury were told that if notices sent from New York on the day after the protest would in due course of mail arrive at Shelburne Falls on the evening of the second day after protest, a remailing of such notices, addressed to the defendant, on the next, being the third day after the protest, would not be season-able. If the jury followed this instruction, they may have felt bound to answer the second question, as they did, in the negative, without regard to the time when the notice actually reached Shelburne Falls and came to the hands of the plaintiffs' cashier. This would be applying a wrong measure of time, and a wrong test of diligence, to the replacing of the notice in the post-office.

The question was not what would be the proper time therefor, measured by the ordinary course of the mails from New York, but what was the proper time having regard to the actual receipt of the notice by the plaintiffs' cashier. If he replaced the notice, properly addressed, in the post-office immediately or without unreasonable or unnecessary delay, that was enough to entitle the plaintiffs to recover, although it might have been three or more days after the protest. On this point, we feel bound to

*Sustain the exceptions.*